## MOORE vs. WALLIS et als.

1. Where a ward, after the death and distribution of the estate of a security on the guardian's bond, obtains a decree against the guardian, upon which execution is issued and returned no property, a court of equity will entertain jurisdiction of a bill filed by the ward against the personal and legal representatives of the deceased security, to enforce satisfaction of the demand.

2. Persons under age are expressly excepted by the proviso to the statute of non-claim, and the fact that the minor has a guardian cannot exclude it from the benefit of the proviso.

3. The liability incurred by the surety on a guardianship bond is not discharged by his death, but continues for the full term of the guardianship.

4. If the personal representative of the deceased surety wishes to put an end to the liability, could he not under the statute compel the guardian to give new security—QUERE?

ERROR to the Chancery Court of Talladega. Tried before the Hon. David G. Ligon.

THE bill in this case was filed by the plaintiff against the defendants in error. The facts sufficiently appear in the opinion. The chancellor dismissed the bill for want of equity, which is the error here assigned.

WOODWARD, for the plaintiff in error:

If there is equity in making the estate of him, who enables an unprincipled or imprudent guardian to get possession of an orphan's property and spend it, responsible to the orphan, then there is equity in this bill.

Creditor can go into equity to subject real estate of debtor in the hand of an heir, without judgment at law.—1 Vesey, sr., 210; Thompson v. Brown, 4 Johns. Ch. 619; Story Eq. Pl. 162, §§ 173-4. So he can do likewise to subject chattels.— Thompson v. Brown, Johns. Ch. 619; Nelson et al. v. Hill, 5 How. 127; Copwood v. Wallace, 12 Ala. 796.

So, there being none who would accept administration, bill was filed against heirs and legatees, and distributees, and sustained.—Milligan v. Milledge & Wife, 3 Cranch, 220.

So debtor conveyed property to children, and died—simple contract creditor can go into equity, in the first instance, to subject it.—Obrien v. Coulter, 2 Blackf. 423.

So, the executor having died immediately after taking out letters, bill was filed against the children, they having the possession of the property, and sustained.—Hobkirk v. Dennis, 2 Munf. 326.

So, if the executor has distributed the estate, creditor may bring him and the legatees both into court of chancery, and decree payment by those ultimately bound.—Riddle v. Mandeville, 5 Cranch, 330.

So, if executor and securities are insolvent, creditor has no other remedy, and his right to the aid of the court is unquestionable.—5 Cranch, 330.

If a judgment were necessary, before proceeding in equity, remedy might be completely obstructed, because the former executors could plead final settlement and distribution, after eighteen months, without notice. If new one could be appointed, he could plead no assets, and in either event, judgment *quando* could not be obtained, unless executor or administrator choose to plead so as to admit of that judgment.—2 Lomax, 446; Thrash v. Sumwalt, 5 Ala. 13.

Statute of non-claim no bar to an infant.—See the Statute, and Thrash v. Sumwalt, 5 Ala.

The husband and wife are proper parties, because the widow's interest in the personalty is subject to contribution.—Foster v. Crenshaw, 3 Munf. 544; 2 Lomax Ex'rs, 478, sec. 10.

There was no cause of action against the estate, before judgment or decree against the guardian.—Thompson, judge, v. Searcy, 6 Port. 393; Moore v. Armstrong, 9 ib. 705.

Where remedy is doubtful, or defective, equity will take jurisdiction.—3 Cow. 445; 1 St. & Por. 138.

Decree against guardian is conclusive against security.—Chilton v. Sparks, 15 Ala. 671. The same case shows that security can claim no exemption from liability, because another guardian may be liable.—See 16 Ala. 548.

RICE & MORGAN, for the defendants:

1. This is an attempt to transfer to a court of chancery the cognizance of a purely legal question, (the recovery of damages for breach of a bond.)—Thrash v. Sumwalt, 5 Ala. 13; Fitzpatrick v. Edgar, 5 Ala. 499.

2. The alleged final settlement does not discharge the property of the deceased surety, coming to the administrator after final settlement, from any liability which may have existed against the estate before that settlement—unless the statute of non-claim has barred the claim before suit brought in the proper court. The administrator may be sued after such final settlement.—5 Ala. 13, *supra*.

3. But there was no liability against the heirs or representatives of the deceased surety, at the time this bill was filed.

The guardian's bond is void on its face, for want of authority in those who took it.—Butler v. Foster, 14 Ala. 323; Governor v. Jackson, 15 ib. 703.

The bond cannot be made valid by extrinsic matter, whether it be matter of record or matter *in pais*—unless on a direct application to reform the bond.—Gayle v. Hudson, 10 Ala. 116; Flournoy v. Sims, 17 ib.

There is no presentment of the bond to the administrators before the bill was filed—and presentment was necessary, as the complainant had a guardian all the time.

The surety died long before any property of the ward was received by the guardian. All the property received by the guardian, was money.—1 U. States. Dig. Supplement 456, §§ 574, 578.

There is no judgment against the surety or his repsesentatives.—Mizzell v. Herbert, 12 Smedes & Mar, 547. And the

judgment against the guardian, being obtained for money received by him long after the death of the surety, is no evidence against the heirs or representatives of the surety.—Babcock v. Williams, 9 Ala. 151.

If (as plaintiff contends) there is no representative of the surety who could be sued, after the final settlement was made, then the bill has no equity for want of a representative.—Robinson v. Robinson, 11 Ala. 949.

PARSONS, J.—The bill was dismissed for the want of equity. In determining whether or not the decree is erroneous, we are confined to the bill itself. The chancellor went upon two grounds, the first of which was, that he had no jurisdiction of the case, as the complainant had not exhausted her remedy at law. It was held in this court that chancery will not entertain a bill, filed by a creditor, alleging a waste of the personal estate of a testator, by the executor, and seeking to subject the lands of the testator, in the possession of heirs and devisees, to the payment of his debt, except it be avered and proved, that the executor and his sureties are insolvent, and all remedy at law has been exhausted against them.—Darrington et al. v. Borland, 3 Port. 9. And in another case, it was held that chancery will not lend its aid to enforce the payment of debts due from an estate, out of such portion thereof as has regularly passed into the hands of heirs and distributees, when the representative has committed a *devastavit*, until the ordinary legal remedies have been employed unsuccessfully, against the representative and his sureties.—Pyke v. Searcy et al., 4 Port. 52. But those cases were very different from the present. The bill in this case states, that Edmund Foreman, the complainant's former guardian, was cited by the judge of the Orphans' Court to make settlement, at her instance, and that she recovered a decree against him for three thousand two hundred and twenty-eight dollars and four cents, which decree was rendered on the third day of June 1844. And it is further stated in the bill that execution was issued from the decree, by means of which several sums were levied, amounting in the aggregate to three hundred and eighty-two dollars and ninety-two cents, and that the execution was returned no property found as to the residue. It is obvious that the complainant has proceeded at law against Edmund Foreman as far as is necessary.

Foreman's bond as guardian, to which Jesse Foreman and Bartley M. Pace were sureties, was executed on the 30th Jan. 1838. Mr. Pace died shortly afterwards, and this bill is filed against his representatives, heirs and distributees, to recover the amount of his liability to the complainant upon the bond. It is not stated in the bill that any suit at law was brought by the complainant against the personal representatives of Mr. Pace, but it is alleged that administration on Pace's estate was granted on the 17th day of Aug. 1838; that after the lapse of eighteen months thereafter, and before the claim of the complainant had accrued, to-wit, on the 17th day of Aug. 1840, the administrators made a full and final settlement, and also a supplemental settlement on the 18th April 1842, before the Orphans' Court, and that in pursuance of a decree of that court, the personal estate was distributed, and that the heirs of Pace, who are part of the defendants, inherited a valuable real estate, but that the real estate so descended is not sufficient to satisfy the complainant's demand. It is stated that the personal estate has been sold and the proceeds of the shares of B. M. Pace, E. Pace and E. A. Pace, three of the defendants, are under the control of the defendant Wallis, as their guardian. It is also alleged in the bill that Jesse Foreman, the other security on the bond, is hopelessly insolvent. As the bill, upon this question, is to be taken as true in all things, the question is, whether, notwithstanding all that it states, it is wanting in equity, because it does not show that the complainant had pursued her remedy at law against Pace's administrators. If this is to be required, it is obviously requiring what cannot be of any use. After the lapse of eighteen months from the grant of administration, and before the complainant's demand had accrued, or, so far as appears, had ever been heard of by the administrators, there was a decree for distribution. Thus all that was in the hands of the administrators passed to and was vested in the distributees; and of this there is record evidence. If it were conceded as doubtful, nevertheless, whether the complainant's demand is to be paid by the administrators out of their own money, or by the the distributees and heirs, the answer is that the parties to this question are properly before the court, and it can be decided by the chancellor, after hearing all the evidence. The English courts of chancery have gone very far to entertain bills in favor of

bond and other creditors against executors and administrators. The cases are collected and commented on by Chancellor Kent, in Thompson v. Brown, 4 Johns. C. R. 619. And we can see no objection, in cases like this, to joining the distributees as co-defendants; for we are entirely satisfied from the facts stated in the bill, that the distributees, and not the administrators, should pay the complainant's demand, if it can be established. This bill does not allege the necessity of a discovery, but it alleges the decree of distribution, which, under the circumstances, we think is entirely sufficient.

2. The bill does not state that the bond of Foreman as guardian, or the complainant's demand in any form, was presented to the administrators of Mr. Pace, and for this the counsel of the defendants contends that the bill is wanting in equity. But the statute of non-claim does not extend to persons under age; they are expressly excepted by the proviso, and consequently, the complainant is not affected by that statute. The counsel contended that as the complainant had a guardian to attend to her affairs, she is not within the proviso, but we cannot agree with the counsel as to that; if such were to be the construction, very few orphans, perhaps, would be within the saving of the proviso.

3. It is contended that as Mr. Pace died shortly after the bond was executed and before any liability accrued thereon, he was discharged from the time of his death, as surety. The bond was the evidence of an executory contract, that the guardian should perform the duties required of him by law. It embraced the whole term of his guardianship. It is settled that when the condition of a bond is possible at the time it is made, and before the same can be performed, the condition becomes impossible by the act of God, or of the law, or of the obligee, then the obligation is saved.—Co. Lit. 206, a; Badlam v. Tucker, 1 Pickering R. 284. When the bond in this case was executed, the condition was possible, which was simply that the guardian should perform his duties, and it continued possible for him to do this so long as he continued to be the guardian, notwithstanding the death of one of his sureties. We cannot distinguish this case from any other executory contract, in which one has given bond and sureties for his performance, so far as the sureties are concerned. If the guardian himself had died, then

the condition from that time would have become impossible by the act of God, but that is not this case. In the opinion of the chancellor, there is an allusion to the death of Mr. Pace before any liability existed, and he observed—"By the act of God he is deprived of the statutory privilege of watching over his principal and compelling him to give further and additional security, or of removing him from office." But we think that all this could have been done by his administrators, and if it could not, his clear common law liability could not cease in consequence of that, for his death did not deprive his principal of the means of performing his duties.

The counsel contends that the bond is bad, but we think this objection was not appropriately made on a motion to dismiss the bill for the want of equity. We do not wish, however, to be understood as conceding that it is bad.

We decide nothing as to the necessity of other parties.

The decree is reversed and the cause remanded.

CHILTON, J., having been of counsel in this cause, before his election to the bench, did not sit.