## HECHT V. SKAGGS.

Decided May 17, 1890.

1. *Administrator's bond—Surety's liability not terminated by his death.*

   The liability of a surety on an administrator's bond is not discharged by the surety's death, but extends to the entire term of the administration.

2. *Liability of devisor— When a lien on land devised after estate wound up.*

   Where the contributory liability of a deceased surety was not incurred before his estate was wound up, and land in value exceeding the liability was turned over to his sole devisee, judgment against the devisee will be rendered for the amount of the liability, to be charged as a lien upon the land.

APPEAL from *Randolph* Circuit Court in Chancery.

J. W. BUTLER, Judge.

Levi Hecht sued Serena Skaggs to compel her, as devisee of her father, James Russell deceased, to make contribution as between co-sureties. The complaint alleged that J. P. Black, James Russell and appellant in 1871 became sureties on the bond of T. J. Ratcliffe, administrator of the estate of W. H. Ratcliffe, deceased, in the sum of $12,000; that Russell died in 1876 leaving property worth $5,000 to defendant as his sole devisee; that Ratcliffe, the administrator, died in 1881; that subsequently judgment for the sum of $2,984 was obtained against T. J. Ratcliffe, administrator, and against J. P. Black and plaintiff on T. J. Ratcliffe's bond for waste of the W. H. Ratcliffe estate committed by him; that Ratcliff's estate was insolvent and only paid $800 on the judgment; that J. P. Black was insolvent and only paid $400 on the judgment; that plaintiff was compelled to pay thereon the sum of $1,914. Prayer that defendant be required to contribute the ratable share due by her testator. The court found the facts as stated, but that the waste was

committed by T. J. Ratcliffe after Russell's death. The court dismissed the complaint, and plaintiff appealed.

*J. C. Hawthorne* for appellant.

1. The bond was a joint and several obligation, and survives against the heirs, executors and administrators of each of the obligors. Mansf. Dig., secs. 3898-3900.

2. If an administrator sells property exempt from sale, it is not competent for him or his sureties to question the right to make the sale after he has collected the proceeds. 8 Iredell's L. (N. C.), 11; 47 Me., 84. See also 9 Conn., 10.

3. The assets devised are subject to contribution by a co-surety who has paid the joint liability. 31 Ark., 23. Where some of the sureties are insolvent the others must contribute to make up the loss. 44 Ark., 359; 27 Mo., 501; 20 Am., Dec., 557; 3 Pom., Eq., 1418 *n.*

Under section 34, Mansfield's Digest, a surety can compel the administrator to give a new bond, but there is no obligation to do so. The death of Russell did not release his liability for wastes committed by his principal after his death. 20 Ohio St., 337; 3 Denio, 62; 5 Strob. (Law), S. C., 15; 76 Ill., 342; 17 Mass., 464.

The death of a co-surety does not release his estate from contribution. 88 Ind., 324; 50 Cal., 456; 3 Pom., Eq., 1302; Murfree, Off. Bonds, 686-7-8; 40 Iowa, 469.

HEMINGWAY, J. The statute requires every person, to whom letters of administration have been granted, to execute a bond with two or more sufficient sureties to be approved by the clerk; the general tenor of the condition is that the administrator shall well and truly administer according to law all and singular the goods and chattels, rights and credits of the deceased, which come to the hands, possession or knowledge of the administrator, and shall well and truly do

and perform all matters and things touching the administration that are or may be prescribed by law, or enjoined on the administrator by the order, sentence or decree of any court of competent jurisdiction. The obligation of the surety in this bond is not limited by its terms to any period of time, but extends to the entire term of the administration; but the learned judge who tried this cause below seems to have considered that it was limited to breaches that occurred in the life-time of the surety. There is no law that so provides.

The statute provides that, if any surety has become or is likely to become insolvent, or has died or removed from the State, the court may require a new bond to be given. Mansf. Dig., sec. 34. But these are all contingencies that affect merely the financial sufficiency of the bond, and authorize, but do not require, the giving of a new one, and it could not be argued that either insolvency or removal effected a release from liability thereafter accruing. Why should the death of a surety have such an effect?

Where the contract of the decedent is personal, and contemplates in its performance the skill and service of the promising party, it is held that the contract does not survive; the rule may be illustrated by the contract of an artist to paint a picture or execute an engraving, or the contract of a surgeon to perform an operation. In such cases the skill and service of the promising party is the essence of the contract, and it cannot be supposed that the deceased was promising such skill or service for his administrator.

But a contract to pay money survives, although it falls due after the death of the obligor. An administrator's bond is but a promise to pay money in the future. True, it is conditional, and no time of payment is fixed; but the contingency upon which the payment shall be made is declared, and there is no limitation placed upon the undertaking except a compliance with its conditions. The surety could bind his legal representatives, and, by the terms of the contract under con-

sideration, did so. Mansf. Dig., sec. 3898; *Moore v. Wallis*, 18 Ala., 458; Brandt on Suretyship, sec. 113; *Royal Ins. Co. v. Davies*, 40 Iowa, 469; *White's Exrs. v. Commonwealth*, 39 Pa. St., 167; *Hightower v. Moore*, 46 Ala., 387; *Green v. Young*, 8 Greenl., 14; *Knotts v. Butler*, 10 Rich., Eq. (S. C.), 143; *Gordon v. Calvert*, 2 Simons, 253.

It follows that the court erred in holding that the obligation of James Russell did not survive against his legal representatives.

The appellant, having paid on account of a breach of the condition of the bond various sums, to-wit: February 23, 1887, $137.97; April 16, 1887, $713.38; February 19, 1881, $350.51, and on the 14th of May, 1887, $713.38, and the principal in the bond as well as the third surety being insolvent, is entitled to contribution against the estate of Russell his co-surety in half those amounts, with interest from the dates they were paid at six per cent per annum.

The estate of Russell was fully administered before the liability was fixed or the money paid, and lands exceeding in value the amount claimed for contribution passed to the appellee under his will. The appellant is therefore entitled to a judgment against appellee for the amount claimed as above, to be charged as a lien on the lands devised.

The judgment of the circuit court will be reversed and remanded, with directions to enter judgment in accordance with this opinion.